MARGARET L. JONES, Appellee, v. CITY OF SHELDON, Appellant.

MUNICIPAL CORPORATIONS: Street Improvements—Resolution
1 Ordering—Non-Necessity to Copy into Record Book. In the absence of a statute so requiring, failure to copy a resolution *ordering* a public improvement into a book kept for that purpose is not fatal to the validity of the proceeding. The all-important matter is that such resolution be actually adopted by the council by a yea and nay vote.

EVIDENCE: Best Evidence—Resolutions—Street Improvements.
2 When a resolution ordering a street improvement has not been formally entered in the ordinance book, the best evidence of its contents and passage is the original resolution and the minutes of the council relating thereto.

MUNICIPAL CORPORATIONS: Street Improvements—Passage of
3 Resolutions—Unauthorized Change by Clerk—Effect. The legality of a resolution ordering a public improvement and duly passed by the council cannot be affected by a subsequent unauthorized change by the city clerk.

MUNICIPAL CORPORATIONS: Street Improvements—Assessment
4 of Benefits—Frontage. "Frontage" may be given due consideration in arriving at an equitable assessment for street improvements. (Sec. 792-a, Code Sup., 1913.)

EVIDENCE: Street Improvements—Assessment—Equitableness—
5 Presumption. An assessment of benefits for a street improvement is presumed to be equitable and in compliance with the statute. The burden of proof to rebut the presumption is on the property owner.

MUNICIPAL CORPORATIONS: Street Improvements—Assessment
6 of Benefits—Presumption as to Value. The assessment roll last preceding an assessment for street improvement is prima-facie evidence of the value of the property and controls in the absence of other evidence. (Sec. 792-a, Code Sup., 1913.)

MUNICIPAL CORPORATIONS: Street Improvements—Assessing
7 Different Lots in Lump Sum—Apportionment. An assessment of a lump sum against two lots of substantially the same character

and location is not necessarily invalid. Such situation justifies the court in apportioning the assessment equally between the two lots.

*Appeal from O'Brien District Court.*—HON. W. D. BOISE, Judge.

SATURDAY, OCTOBER 30, 1915.

IN the district court, this was an appeal from a pavement assessment made against the property of plaintiff by the city council of the city of Sheldon. Several parcels of property were involved. The assessment was reduced in the district court as to one parcel of property and the form of the assessment was modified as to others. Both parties have appealed. The defendant city having first appealed appears here as appellant. The principal complaint, however, against the decree of the district court is made by the appellee.—*Modified* and *Affirmed.*

O. H. Montzheimer, for appellee.

Lindsay & Phelps, for appellant.

EVANS, J.—It would be difficult to make a more confusing record than is presented herein. The plaintiff is the owner of six certain lots in the city of Sheldon, against five of which a paving assessment was levied. "Lots 23 and 24 and the North one half of Alley" in block 6 were assessed $267.30. Lots 17 and 18 in Block 7 were assessed $237.60. Lot 15 in Block 14 was assessed $787.04. Plaintiff appeared before the city council with objections to the assessments. Her first objection went to the validity of the assessment *in toto*. This was based upon an alleged failure to pass a resolution ordering the paving.

The second objection went to the validity of the assessment, because it was not apportioned according to benefits but was determined solely in proportion to frontage.

The third objection went to the validity of the assess-

ments on the ground that they were in excess of 25 per cent of the value of plaintiff's property thus assessed.

The fourth objection went to the validity of the assessments on the lots in Blocks 6 and 7, because a lump sum was laid against the lots in pairs in each block.

While the objections actually made were more numerous than the foregoing, they were all reducible to one or the other of the above.

The trial court reduced the assessment on Lot 15 in Block 14 from $787.04 to $450, on the ground that the lot thus assessed was not of greater value than $1,800. The lump assessments against the pairs of lots in Blocks 6 and 7 were split and apportioned to each separate lot, but no reduction was made therein. The validity of the assessments in all other respects was sustained.

The only grievance presented by the city of Sheldon on this appeal is the reduction of the assessment on Lot 15. The grievances of the plaintiff on her appeal are coextensive with her objections as above stated.

I. Turning first to the first objection named as to the invalidity of the entire proceedings, this objection is based largely upon alleged imperfections in the record of the proceedings. Some confusion arose out of a duplication of identifying numbers which were applied to certain resolutions passed by the city council. With a view to rectification, the city clerk at a later time changed the identifying number of a resolution upon his records, without any formal authority from the city council and because he deemed the existing number as his own evident mistake. The claim of invalidity rests upon the assumption that if this correction had not been made by the clerk, the invalidity of the proceedings would appear upon the face of the records.

To be more explicit, on March 20, 1913, the city council regularly adopted a proposed resolution of necessity, in compliance with the provisions of Code Sec. 810. April 28th was fixed as a time of hearing. On such date, the plaintiff

appeared before the city council with her objections. These objections were overruled. The proposed resolution carried the number "166". It is conceded that, at the meeting of April 28th, all objections to the proposed pavement were overruled and that the proposed resolution was formally passed. There was before the council at the same time an amplified form of the same resolution. This duplicated the provisions of the proposed resolution of March 20th, and in express terms "ordered" the construction of the pavement. It does not appear from the record that this resolution carried any distinctive number. It appears to have been treated as a part of the proposed resolution. The records of the meeting show the passage of Resolution Number 166.

The following sections of the Code were involved:

"Sec. 810. When the council of any such city shall deem it advisable or necessary to make or reconstruct any street improvement or sewer authorized in this chapter, it shall, in a proposed resolution, declare such necessity or advisability, stating the kind of material proposed to be used and method of construction, whether abutting property will be assessed, and, in case of sewers, the kind and size, and what adjacent property is proposed to be assessed therefor, and in both cases designate the location and terminal points thereof, and cause twenty days' notice of the time when said resolution will be considered by it for passage to be given by four publications in some newspaper of general circulation published in the city, the last of which shall be not less than two nor more than four weeks prior to the time fixed for its consideration, at which time the owners of the property subject to assessment for the same may appear and make objections to the contemplated improvement or sewer and the passage of said proposed resolution, at which hearing the same may be amended and passed, or passed as proposed."

"Sec. 811. Upon compliance with the preceding section, the council may, by ordinance or resolution, order the making

or reconstruction of such street improvement or sewer, but the vote shall be by yeas and nays, and entered of record, and the record shall show whether the improvement was petitioned for or made on the motion of the council."

It will be noted that Sec. 810 permits the adoption of the original resolution in an amended form after hearing had thereon. It is not necessary to pass this resolution by yea and nay vote. Under Sec. 811, it is required that a vote ordering the construction of a pavement shall be by "yeas and nays". The record of the city council made on April 28th shows the adoption of number 166 and by a yea and nay vote. The record of the meeting of March 20th shows the adoption of the proposed resolution on such date also. It appears from the evidence of the city clerk that both papers were actually before the city council for their consideration on April 28th and that, in making up the record in the form in which he did, reference was had to the final resolution ordering the improvement. Each paper was identified by an informal certification made at the time and signed by the mayor and the clerk, to the effect that they were adopted April 28, 1913. Neither of these resolutions had ever been copied or spread upon any book. The city clerk testified on the trial that he had an ordinance book into which he expected to copy all resolutions of the city council, but had not yet copied the resolutions in question. The only record of their passage, therefore, in existence was the record or minutes of the meeting and the original papers themselves. We do not think that failure to spread the resolutions upon the pages of a book was necessarily fatal to their validity. If this had been done, such record would doubtless be the best evidence of the action of the council. *Hintrager v. Kiene et al.*, 62 Iowa 605.

The evidence before the trial court was the record in the

1. MUNICIPAL CORPORATIONS: street improvements: resolution ordering: non-necessity to copy into record book.

form in which it actually was. The objection that it was not the best evidence was not available because there was no better evidence and never had been. The require-

**2. EVIDENCE: best evidence: resolutions: street improvements.**

ment of Sec. 811, that the yea and nay vote should be entered upon the record, was fully complied with. There is no express requirement of the statute that the resolution itself should be copied into or spread upon any record book. The original papers comprising the proposed resolution of March 20th as published, and the amplification thereof, including the provision *ordering* the construction of the pavement, were identified by the public officials as witnesses beyond cavil. There is no uncertainty as to what was done on April 28th by the city council within the contemplation and intent of its members. It was not essential that either resolution carry a number. The only function served by such number was that of identification. Under the evidence in this case the identification is complete without resort to the number; nor does it present any contradiction to the number if it was used.

We have already referred to the fact that at a subsequent time the clerk changed the number ''166'' to ''169''. His authority to do so is challenged. Conceding that the clerk

**3. MUNICIPAL CORPORATIONS: street improvements; passage of resolutions: unauthorized change by clerk: effect.**

acted without authority in making such change, it will be seen from our foregoing discussion that such unauthorized act is decisive of nothing material to the controversy. We have confined our foregoing discussion to the actual state of the records as they were before the new number was substituted. Under the evidence, the proceedings were valid before the change of number was made. It was not in the power of the clerk to render them invalid by any unauthorized act. The validity of the proceedings must, therefore, be sustained.

II. Plaintiff complains that the assessment was not made in proportion to benefit, but was determined solely in propor-

tion to frontage.  The resolution making the assessment pur-
ported to do so in accordance with the statu-

4. MUNICIPAL
CORPORATIONS:
street improve-
ments: assess-
ments of bene-
fits: frontage.

tory provision requiring it to be made in pro-
portion to special benefits.  The *result* was
the same as though it had been done accord-
ing to frontage.  There is nothing in the ·statute which
necessarily forbids the consideration of frontage as a basis
for equitable apportionment.  There may be circumstances
which would render an apportionment according to frontage
inequitable.  In such a case, the consideration of the frontage
must give way to an equitable distribution in proportion to
benefits.  It is safe to say that in many, if not in a majority,
of cases, a distribution in proportion to frontage is equitable.
We must indulge in a presumption in the first instance in
favor of the action of the city council.  The burden was
on the plaintiff to show that the result was inequitable in her
case.  We do not think that the evidence in

5. EVIDENCE:
street improve-
ments: assess-
ment: equita-
bleness: pre-
sumption.

the record justifies such a contention.

III. The trial court found that the actual
value of Lot 15 was $1,800.  Its assessed value
was $1,600.  The plaintiff contends that the assessed value
should prevail, whereas the defendant contends that the testi-
mony showed a higher valuation than $1,800.  An examination
of the evidence satisfies us that the conclusion of the trial court
is well sustained by it and that the reduced assessment of $450
against this lot should be sustained.

IV. An assessment of $237.60 was made against Lots 17
and 18 in Block 7.  The last assessed valuation of this prop-
erty is shown to be $600 and no more.  Plaintiff urges that
the assessment should be reduced because there

6. MUNICIPAL
CORPORATIONS:
street improve-
ments: assess-
ment of bene-
fits: presump-
tion as to
value.

is no evidence to overcome the statutory pre-
sumption in favor of such assessed valuation.
No evidence is pointed out to us by the defend-
ant which shows a greater valuation.  We
must, therefore, adopt the valuation fixed in the last assess-

ment. This would necessitate a reduction of the assessment on this property to $150. This amount should be distributed between the lots in the proportion fixed by the district court. As to the lots in Block 6, the testimony is sufficient to show a valuation of $1,200. The assessment on this property of $267.30 must be sustained, subject to the distribution made by the decree of the district court.

V. Referring to the assessment of lump sums against the pairs of lots in Blocks 6 and 7, the trial court distributed such assessment in proportion to the frontage of each lot, and assessed against each lot its own proportionate share. The plaintiff complains of this action of the district court, in that it had no evidence to justify such a distribution. The argument is that there was no evidence to show which lot, if either, received the greater benefit, nor what the comparative benefits were to the respective lots. There is a sense in which it is true that the evidence is silent on this question. It does appear, however, in a general way throughout the testimony that the character and location of each of the two lots in a given block were substantially the same. An equitable apportionment, therefore, would presumptively result in a distribution between them according to frontage. The action of the trial court in this respect was, therefore, justified.

*7. MUNICIPAL CORPORATIONS: street improvements: assessing different lots in lump sum: apportionment.*

The decree entered below will be modified by a reduction and distribution of the tax assessed against the lots in Block 6, including the alley. A decree may be entered here distributing the tax, $150, between such lots and the alley in proportion to frontage. In all other respects the decree entered below will be affirmed.—*Modified* and *Affirmed*.

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.